**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRITTNEY LEVY, MAURICE ROMALHO, and EMAD HAMID, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>ENDEAVOR AIR, INC.,<br><br>        Defendant. | Civil Action No. 1:21-cv-04387-ENV-JRC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Date of Service:  January 24, 2022

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ...................................................................................3

    A.   Endeavor Principally Operates Outside of New York..................................3

    B.   Levy's Employment Was Governed By A CBA............................................4

    C.   Romalho and Hamid Work As Endeavor Ground Crew. ..............................6

III. LEGAL STANDARD ..............................................................................................6

    A.   Rule 12(b)(1) – Lack Of Subject Matter Jurisdiction..................................6

    B.   Rule 12(b)(6) – Failure To State A Claim...................................................6

IV.  ARGUMENT ...........................................................................................................8

    A.   Plaintiffs Do Not Have Standing. ................................................................8

    B.   Plaintiffs Cannot Assert A Frequency Of Pay Claim. ...............................11

        1.   Section 191 Does Not Contain An Express Private Right Of
            Action. ...........................................................................................11

        2.   There Is No Basis To Infer A Private Right of Action. ..........................12

            i.   Recognizing A Private Right Does Not Promote Legislative
               Intent. .................................................................................13

            ii.   Creation Of A Private Right Is Not Consistent With The
               Legislative Scheme............................................................15

            iii.  Plaintiffs Are Not Part Of The Class Of Workers For
               Whose Particular Benefit The Statute Was Enacted. ..................17

        3.   Vega Is Wrongly Decided And Not Entitled To Any Deference. ...........20

    C.   This Court Does Not Have Jurisdiction Over Levy's Or The Proposed
        Flight Attendant Class' NYLL Claim. .................................................22

    D.   Plaintiffs' Proposed Flight Attendant Class Impermissibly Displaces
        Legislative And Policy Decisions Made By Other States. ...................24

    E.   Plaintiffs' Proposed Flight Attendant Class Is Improper Because The New
        York Labor Law Does Not Apply Extraterritorially. ...........................30

V.   CONCLUSION ......................................................................................................32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Microsoft Corp.*,
    2009 WL 1116360 (S.D.N.Y. Apr. 27, 2009) ................................................. 6

*Am. Booksellers Found. For Free Expression v. Dean*,
    202 F. Supp. 2d 300 (D. Vt. 2002), *aff'd in part, modified in part sub nom.*
    *Am. Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir. 2003) ............................... 29

*Am. Librs. Ass'n v. Pataki*,
    969 F. Supp. 160 (S.D.N.Y. 1997) ......................................................... 26

*Arciello v. Cty. of Nassau*,
    No. 2019 WL 4575145 (E.D.N.Y. Sept. 20, 2019) ........................................... 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................... 7

*Barber v. Lincoln Nat'l Life Ins. Co.*,
    260 F. Supp. 3d 855 (W.D. Ky. 2017), *aff'd*, 722 F. App'x 470 (6th Cir. 2018) ........... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................... 7

*Bernstein v. Virgin Am., Inc.*,
    990 F.3d 1157 (9th Cir. 2021) ............................................................ 28

*Bibb v. Navajo Freight Lines, Inc.*,
    359 U.S. 520 (1959) ...................................................................... 29

*Bostain v. Food Express, Inc.*,
    153 P.3d 846 (Wash. 2007) ............................................................... 28

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*,
    476 U.S. 573 (1986) ...................................................................... 26

*Burgis v. Dep't of Sanitation City of New York*,
    2014 WL 1303447 (S.D.N.Y. Mar. 31, 2014) ................................................. 7

*Capraro v. United Parcel Serv. Co.*,
    993 F.2d 328 (3d Cir. 1993) ........................................................... 22, 23

*Carrier v. Salvation Army*,
    667 N.E.2d 328 (N.Y. 1996) .............................................................. 12

*Caterpillar Inc. v. Williams,*
    482 U.S. 386 (1987) .................................................................................. 23

*Caul v. Petco Animal Supplies, Inc.,*
    2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) ................................. 10, 20

*City of Burbank v. Lockheed Air Terminal Inc.,*
    411 U.S. 624 (1973) .................................................................................. 29

*Coley v. Vannguard Urban Improvement Ass'n, Inc.,*
    2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018) .......................................... 22

*Comptroller of Treasury of Maryland v. Wynne,*
    575 U.S. 542 (2015) .................................................................................. 25

*Consol. Rail Corp. v. Ry. Lab. Execs. Ass'n,*
    491 U.S. 299 (1989) .................................................................................. 22

*Cruz v. TD Bank, N.A.,*
    2 N.E.3d 221 (N.Y. 2013) ......................................................................... 12

*Dieffenbach v. Barnes & Noble, Inc.,*
    887 F.3d 826 (7th Cir. 2018) .................................................................... 10

*Douge v. Nationstar Mortg. LLC,*
    2016 WL 1229061 (E.D.N.Y. Mar. 27, 2016) ............................................ 7

*E.E.O.C. v. Bloomberg L.P.,*
    967 F. Supp. 2d 816 (S.D.N.Y. 2013) ...................................................... 31

*Epstein v. JPMorgan Chase & Co.,*
    2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) .......................................... 11

*Freedom Holdings, Inc. v. Spitzer,*
    357 F.3d 205 (2d Cir. 2004) ..................................................................... 25

*Garcia v. Allied Parking Sys.,*
    752 N.Y.S.2d 317 (N.Y. App. Div. 2002) ................................................. 24

*Gibbons v. Ogden,*
    22 U.S. 1 (1824) ....................................................................................... 25

*Hart v. Dresdner Kleinwort Wasserstein Securities, LLC,*
    2006 WL 2356157 (S.D.N.Y. Aug. 9, 2006) ............................................ 31

*Healthcare Distribution All. v. Zucker,*
    353 F. Supp. 3d 235 (S.D.N.Y. 2018), *reversed on other grounds* .......... 27

*Healy v. Beer Inst., Inc.*,
  491 U.S. 324 (1989) ................................................................25

*Hussain v. Pak. Int'l Airlines Corp.*,
  2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012) ........................22

*IKEA U.S. v. Indus. Bd. of Appeals*,
  660 N.Y.S.2d 585 (N.Y. App. Div. 1997)..............................22

*Kamen v. Am. Tel. & Tel. Co.*,
  791 F.2d 1006 (2d Cir. 1986) ..................................................6

*Kardovich v. Pfizer, Inc.*,
  97 F. Supp. 3d 131 (E.D.N.Y. 2015).......................................7

*Kassman v. KPMG LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013) ...................................30

*Kawa Orthodontics, LLP v. Secretary, United States Department of the Treasury*,
  773 F.3d 243 (11th Cir. 2014) ...............................................10

*Kearns v. Cuomo*,
  981 F.3d 200 (2d Cir. 2020) ....................................................8

*Levy v. Rowland*,
  359 F. Supp. 2d 267 (E.D.N.Y. 2005).....................................25

*Levy v. Verizon Info. Servs., Inc.*,
  498 F. Supp. 2d 586 (E.D.N.Y. 2007).....................................24

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................8

*Maddox v. Bank of New York Mellon Trust Co., N.A.*,
  19 F.4th 58 (2d Cir. 2021) ..........................................8, 9, 10

*Magnuson v. Newman*,
  2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013) .................30, 31

*MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*,
  861 F.3d 40 (2d Cir. 2017), *as amended* (Aug. 2, 2017)...........9

*Morrison v. Nat'l Australia Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010)...........6

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*,
  918 F.3d 1312 (11th Cir. 2019) .............................................10

iv

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ................................................................................6

*Northwest Airlines, Inc. v. State of Minnesota*,
    322 U.S. 292 (1944) (Jackson, J., concurring) ......................................29

*O'Neill v. Mermaid Touring Inc.*,
    968 F. Supp. 2d 572 (S.D.N.Y. 2013) .................................................31

*Pedroza v. Ralph Lauren Corp.*,
    2020 WL 4273988 (S.D.N.Y. July 24, 2020) ......................................31

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ............................................................................25

*Rajamin v. Deutsche Bank Nat'l. Tr. Co.*,
    757 F.3d 79 (2d Cir. 2014) ..................................................................10

*Rosario v. Icon Burger Acquisition LLC d/b/a Smashburger*,
    No. 2:21-cv-04313-JS-ST ......................................................................9

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) ............................................................................30

*Sheehy v. Big Flats Cmty. Day*,
    541 N.E.2d 18 (N.Y. 1989) ................................................................12

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (U.S.) ...............................................................................9

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................................6

*Strubel v. Comenity Bank*,
    842 F.3d 181 (2d Cir. 2016) ..................................................................8

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ...................................................................8, 9, 10

*Van v. LLR, Inc.*,
    962 F.3d 1160 (9th Cir. 2020) ............................................................10

*Vega v. CM & Assocs. Constr. Mgmt., LLC*,
    107 N.Y.S.3d 286 (N.Y. App. Div. 2019) ...........................................20

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003) ................................................................24

*Warman v. Am. Nat'l Standards Inst.*,
  2016 WL 3676681 (S.D.N.Y. July 6, 2016)............................................................30

**Statutes**

45 U.S.C. § 153(i)..............................................................................................................22

45 U.S.C. § 184.............................................................................................................5, 22

New York City Human Rights Law..................................................................................31

New York State Human Rights Law.................................................................................31

Iowa Code § 91A.3............................................................................................................28

LMRA Section 301............................................................................................................24

Minn. Stat. Ann. § 181.10................................................................................................28

N.Y. Civil Practice Law......................................................................................................9

New York Labor Law.................................................................................................*passim*

NYLL § 10...................................................................................................................13, 14

NYLL § 11...................................................................................................................13, 14

NYLL § 12...................................................................................................................13, 14

NYLL § 191...............................................................................................................*passim*

NYLL § 198...............................................................................................................*passim*

NYLL § 193........................................................................................................................24

NYLL § 196........................................................................................................................16

NYLL § 196-a.....................................................................................................................16

Ohio State Law..................................................................................................................28

Railway Labor Act...................................................................................................2, 22, 24

**Other Authorities**

Black's Law Dictionary.....................................................................................................21

Federal Rule of Civil Procedure Rule 12(b)(1) and 12(b)(6) ..................................1, 6, 24

Federal Rule of Civil Procedure Rule 12(b)(6) ...................................................1, 6, 7, 24

Federal Rule of Civil Produce Rule 56........................................................................6

Federal Rules of Evidence Rule 201 ..........................................................................7

Labor, Off. of Gen. Couns. Op. RO07-0041 (May 8, 2007) ......................................16

N.Y. Civil Practice Law and Rules § 901(b)..............................................................9

United States Constitution .....................................................................................24, 25

Defendant Endeavor Air, Inc. ("Defendant" or "Endeavor"), by and through its attorneys Morgan, Lewis & Bockius LLP, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Class Action Complaint ("Complaint" or "Compl.") filed by Plaintiffs Brittney Levy ("Levy"), Maurice Romalho ("Romalho"), and Emad Hamid ("Hamid") (collectively, "Plaintiffs") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## I.    __INTRODUCTION__

This is a unique case. Levy, Romalho, Hamid, and a putative class of alleged "manual workers" ask the Court to award them a substantial penalty equal to 100% of their wages—even though Plaintiffs received every cent they were owed. Plaintiffs claim that they can collect that sum because Endeavor paid them bi-weekly or semi-monthly instead of once a week. Plaintiffs assert that Endeavor violated a procedural provision in the New York Labor Law ("NYLL"), which requires employers to pay "manual workers" on a weekly basis. Plaintiffs' Class Action Complaint must be dismissed for multiple reasons.

First, Plaintiffs do not have Article III standing to assert a frequency of pay claim under NYLL § 191 ("Section 191") in federal court, because they have not alleged how being paid bi-weekly or semi-monthly (as the flight attendants' negotiated Collective Bargaining Agreement mandates) instead of once a week (as Section 191 allegedly requires) caused them concrete and actual harm.

Second, Plaintiffs do not have a cause of action to assert a frequency of pay claim under Section 191. The text of Section 191 does not provide a private cause of action entitling employees to recover penalties and Courts have held that no such private right should be inferred where, as is the case here, all wages have been paid. There is likewise no basis to infer such a right into Section 191, because the history of the applicable statutory scheme, including its

1

emphasis on administrative enforcement, makes clear that the only remedies available for frequency of pay violations are civil penalties recoverable by the Commissioner of Labor.

Third, this Court lacks subject matter jurisdiction over Levy, a (former) Endeavor flight attendant, and the proposed flight attendant class' NYLL Section 191 claim, because it is preempted by the Railway Labor Act ("RLA"). Under the RLA, disputes that require interpretation or application of a Collective Bargaining Agreement ("CBA") are subject to the exclusive jurisdiction of the grievance and arbitration process, which culminates in final and binding arbitration before a system board of adjustment ("system board"). Here, Levy's (and all flight attendants') claim is integrated with and governed by the applicable CBA. Thus, to adjudicate whether Endeavor properly paid her (and all flight attendants) on a semi-monthly basis, the Court will be required to displace the system board and interpret the CBA governing Levy's (and the proposed flight attendant class') terms and conditions of employment. Such displacement would violate the RLA and, accordingly, Levy's (and the proposed flight attendant class') claim is barred by a lack of subject matter jurisdiction.

Fourth, this Court should dismiss Levy's (and the proposed flight attendant class') NYLL Section 191 claim, because the application of New York State's pay frequency law to Endeavor flight attendants would be an impermissible extraterritorial application of state law that violates the Commerce Clause. Plaintiffs allege that all flight attendants who worked for any length of time in New York are entitled to damages for alleged violations of the NYLL, regardless of how little time that might be and regardless of where the flight attendants live, are based, or otherwise worked during the applicable pay period. Under Plaintiffs' theory, New York State law applies to every Endeavor flight attendant who flies into or out of a New York airport even when they are not working in New York. That theory would also mean that those same flight attendants are

2

subject to the wage and hour laws of every other jurisdiction in which they work.  There is thus a substantial risk of inconsistent legislation among states that all purport to have jurisdiction over the same employee engaged in interstate commerce.  And, application of New York State's law in this manner also impermissibly displaces the legislative policy and decisions of other states, including the states where Endeavor has its principal operations and where flight attendants live, are based, and/or work.

Finally, in the alternative, the proposed flight attendant class' NYLL Section 191 claim should be dismissed to the extent that Plaintiffs purport to apply New York Labor Law extraterritorially to any work performed outside of New York and to flight attendants who are not based in New York.  Courts have consistently found that the New York Labor Law only protects those employees who work in New York.  Flight attendants who are not based in New York or perform work outside of New York are, therefore, not entitled to the benefits and protections of New York law.

Accordingly, Endeavor respectfully submits that the Court should dismiss Plaintiffs' Class Action Complaint with prejudice.

## II.   **FACTUAL BACKGROUND**[1]

### A.   **Endeavor Principally Operates Outside of New York.**

Endeavor operates 193 regional jets on more than 900 daily flights to over 140 cities across North America, servicing a diverse population of people across inter-state lines. Declaration of Jodie Douglas ("Douglas Decl."), ¶ 4, Ex. B.  Endeavor is a Georgia corporation with a principal place of business in Minneapolis, Minnesota.  Compl. ¶¶ 2, 19; Douglas Decl.,

---

[1] The facts taken from the Complaint are assumed to be true solely for purposes of this Motion. Endeavor denies the allegations, including that its employees are "manual workers" as defined by NYLL and that it engaged in any illegal or wrongful conduct.

3

¶¶ 5-6, Ex. B.  Minneapolis is where the center of direction, control, and coordination for the Company takes place.  Douglas Decl., ¶ 7.  Most of Endeavor's executive and administrative functions, including that of legal, payroll, and human resources are conducted at its headquarters in Minnesota.  *Id*.

Endeavor's 1,500 active U.S. flight attendants are based at one of its six domestic flight attendant bases:  Atlanta, Cincinnati, Detroit, Minneapolis, and New York City (LaGuardia International Airport and John F. Kennedy International Airport).  Compl. ¶ 3; Douglas Decl., ¶ 8, Ex. B.  A base (sometimes referred to as a "domicile") is a geographical city served by Endeavor where flight attendants' rotations typically begin and end.  Douglas Decl., ¶ 9, Exs. A, (§2. Definition of Base; Definition of Domicile), B.  Flight attendants can elect to transfer bases twice in a rolling twelve month period.  *Id.*, Ex. A (§8.A. Permanent Positions).  Flight attendants may also transfer bases on a temporary basis and can be displaced from their base of choice by Endeavor due to operational needs.  *Id.*, Ex. A (§8.B. Temporary Positions; § 2. Definition of Displacement).

**B.     Levy's Employment Was Governed By A CBA.**

Levy worked for Endeavor as a flight attendant based in New York City from September 2016 until she was terminated on May 4, 2018, because she made harassing and demeaning statements to a co-worker in violation of Endeavor's professionalism and nondiscrimination policies.  Compl. ¶¶ 10, 38-39.  Due to the unique nature of the airline industry, each flight attendant – including Levy – plays a critical role in the safe transportation and operation of passengers.  Douglas Decl., Ex. A (§2.  Definition of Flight Attendant).  To that end, all flight attendants are responsible for responding to aviation emergencies and facilitating aircraft safety and security procedures.  *Id.*  Flight attendants (like Levy) work predominantly in federal airspace and engage in interstate commerce.  Douglas Decl., ¶ 8.

4

Endeavor's flight attendants are represented for collective bargaining purposes by the Association of Flight Attendants – Communication Workers of America ("AFA").  Douglas Decl., ¶ 10, Ex. A (§1.A. Recognition).  Endeavor and the AFA have entered into a CBA which sets forth the terms and conditions of employment for Endeavor's flight attendants.  *Id.*  As an Endeavor flight attendant, Levy was covered by the CBA at all points during her employment with Endeavor.  *Id.*

The CBA contains a mutually negotiated provision that establishes the methodology, procedures, and frequency for compensating all flight attendants, regardless of their base. Douglas Decl., Ex. A (§18. Compensation).  For example, the CBA mandates that flight attendants are to be paid semi-monthly on the first (1st) and sixteenth (16th) days of each month, or the business day prior if those days fall on a weekend.  *Id.*

As an RLA-covered carrier, Endeavor, together with the AFA, is required to establish a systems board to resolve all disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions…"  45 U.S.C. § 184.  To that end, the CBA contains a detailed procedure that provides for arbitral resolution of disputes growing out of grievances or out of the application of any terms of the CBA.  Douglas Decl., Ex. A (§3.F. System Board Of Adjustment).

Based on the detailed, negotiated provisions relating to Endeavor flight attendants' compensation and responsibilities, all disputes between Endeavor and its flight attendants over such issues implicate an interwoven set of CBA provisions.  Douglas Decl., Ex. A (§2. Definition of Flight Attendant; §18. Compensation).  As a result, all such disputes must – as a matter of law and contract – be exclusively resolved through the systems board procedures.

C.     **Romalho and Hamid Work As Endeavor Ground Crew.**

Romalho has worked at Endeavor as an aircraft maintenance technician and,

subsequently, as an aircraft inspector at LaGuardia International Airport in New York City since

May 2014.  Compl. ¶¶ 44-45.  Hamid has similarly worked at Endeavor as an aircraft mechanic

at LaGuardia International Airport in New York City since June 2018.  Compl. ¶¶ 51-52.

III.   **LEGAL STANDARD**

A.     **Rule 12(b)(1) – Lack Of Subject Matter Jurisdiction.**

Claims – like the one asserted by Levy here – must be dismissed for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1) when the court lacks the statutory or constitutional

power to adjudicate them.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.

2008), *aff'd*, 561 U.S. 247 (2010).  On a motion for lack of jurisdiction, the court may consider

matters outside the pleadings, such as affidavits, documents, and testimony.  *See, e.g.*, *Alston v.

Microsoft Corp.,* 2009 WL 1116360, at *3 (S.D.N.Y. Apr. 27, 2009).  Thus, the standard used to

evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Rule

56.  *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  Levy bears the

ultimate burden of demonstrating the court's jurisdiction to hear her claim by a preponderance of

evidence.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998).

B.     **Rule 12(b)(6) – Failure To State A Claim.**

The Federal Rules also mandate dismissal of a complaint where, as here, the plaintiff

"fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The purpose

of Rule 12(b)(6) is to "streamline[] litigation by dispensing with needless discovery and fact-

finding" and to eliminate baseless claims.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Where "the allegations in a complaint, however true, could not raise a claim of entitlement to

relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To survive a motion to dismiss, plaintiffs must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). A claim has "facial plausibility" only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Mere "'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action'" will not suffice. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Nor can Plaintiffs avoid their pleading burden simply because they purport to bring their case as a class action. *See e.g., Burgis v. Dep't of Sanitation City of New York*, 2014 WL 1303447, at *4-7 (S.D.N.Y. Mar. 31, 2014) (granting defendants' 12(b)(6) motion to dismiss putative class claim for failure to plausibly state a claim).

In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider (1) the facts alleged in the Complaint and documents attached to it or incorporated in it by reference; (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference; (3) documents or information contained in Defendant's motion if Plaintiffs had knowledge or possession of the material and relied on it in framing the Complaint; and (4) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 137 (E.D.N.Y. 2015); *see also Douge v. Nationstar Mortg. LLC,* 2016 WL 1229061, at *5, n.10 (E.D.N.Y. Mar. 27, 2016) ("Second Circuit precedent allows the Court to consider materials outside of the pleading without mandatory conversion of a motion to dismiss to one for summary judgment if they are annexed to the pleadings or incorporated by reference therein.").

IV.     **ARGUMENT**

A.      **Plaintiffs Do Not Have Standing.**

Plaintiffs' Complaint must be dismissed because they do not (and cannot) show that

Endeavor's alleged violation of the NYLL caused them concrete harm.  Article III enables

federal courts to hear only "cases" and "controversies."  *Kearns v. Cuomo*, 981 F.3d 200, 207

(2d Cir. 2020).  A case or controversy exists only when a plaintiff has suffered (1) an injury in

fact; (2) that is traceable to the defendant; and (3) that is redressable by a court ruling in the

plaintiff's favor.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Here, Plaintiffs do not

satisfy the first requirement:  They have not shown an injury in fact, *i.e.*, "the invasion of a

legally protected interest" that is "concrete and particularized and actual or imminent."  *Strubel*

*v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (quotation and citation omitted).

Recently, in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021), the Supreme

Court confirmed that a statutory violation by itself does not give rise to an injury in fact.

Specifically, the Court held that "[o]nly those plaintiffs who have been concretely harmed by a

defendant's statutory violation may sue that private defendant over that violation in federal

court."  *Id*. at 2205.  A concrete injury is one that is real, not abstract.

In *Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 61 (2d Cir. 2021),

the Second Circuit applied *TransUnion* to a case brought under a New York law that is

analogous to the NYLL time-of-payment law at issue in this case.  In *Maddox,* the plaintiffs

sought statutory penalties (like the Plaintiffs do here) because the defendant filed a satisfaction of

mortgage after the time allotted by statute.  *Id*.  The plaintiffs argued that the defendant's late

filing could harm them, but none of those harms had materialized before suit.  *Id*.  The Second

Circuit rejected this argument and found that the *Maddox* plaintiffs lacked standing because they

did not show how the defendant's late filing concretely harmed them.  *Id*. at 64.  So, consistent

with *TransUnion*, plaintiffs' possible injuries were "incapable of giving rise to Article III standing." *Id*. at 65.

Maddox demonstrates that, when a plaintiff seeks statutory penalties for a defendant's alleged violation of a timing requirement in a New York statute (as the Plaintiffs do with Section 191 here), the plaintiff must demonstrate how the defendant's lateness actually and concretely harmed her. Here, Plaintiffs have not met their burden. They have not alleged how being paid bi-weekly or semi-monthly (as the flight attendants' negotiated CBA mandates) instead of once a week (as Section 191 allegedly requires) caused them concrete and actual harm. Indeed, Plaintiffs' Complaint does not allege that they suffered *any* harm, which explains why they demand *statutory penalties* instead of *compensatory damages*. Plaintiffs, therefore, allege a "bare procedural violation"—the failure to be paid at the time prescribed by statute—divorced from any actual and concrete harm to them.[2] *MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 50 (2d Cir. 2017), *as amended* (Aug. 2, 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (U.S.)). Such an allegation is not sufficient to confer Article III standing and their claim must be dismissed.[3] *See* Order, *Rosario v. Icon Burger Acquisition LLC d/b/a Smashburger*, No. 2:21-cv-04313-JS-ST, ECF. 24 (E.D.N.Y. Jan. 21, 2022) (plaintiff's "barebones" Amended Complaint which simply alleged – the same way the Complaint does here

---

[2] *Maddox* recognized that "*TransUnion* eliminated the significance" of classifying statutory provisions as substantive or procedural for standing purposes, so the Court need not definitively determine whether Section 191 is either. 19 F.4th at 64. That said, the procedural nature of a timing requirement like Section 191 still indicates that Plaintiffs must allege more than a mere violation to demonstrate the required injury in fact.

[3] In addition, as a practical matter, Plaintiffs should not be permitted to evade New York's prohibition against recovery of statutory penalties on a class-wide basis by forum shopping and filing their claims in federal court. *See* N.Y. Civil Practice Law and Rules § 901(b) (prohibiting recovery of a statutory penalty in a class action unless specifically authorized by statute).

– that "Defendant failed to pay [p]laintiff and the Class on a timely basis as required by the

NYLL" was insufficient under *TransUnion* and *Maddox* to conclude that plaintiff "actually

suffered the sort of harm that would entitle him to relief").

Plaintiffs may cite to *Caul v. Petco Animal Supplies, Inc.* in support of their argument

that they have standing to enforce the time-of-payment law. *See Caul v. Petco Animal Supplies,*

*Inc.*, 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021). *Caul* does not save Plaintiffs' claim

and should not be followed by this Court for multiple reasons. As a preliminary matter, the

decision in *Caul* came down before the Second Circuit decided *Maddox*, which (as described

above) is analogous to the claim at issue here. Second, the *Caul* district court relied on the

economic theory that a dollar today is worth more than a dollar tomorrow and that, therefore, any

alleged late payment of wages is a concrete harm. *Id.* For Article III standing, however, an

injury must be real, not theoretical. *See Rajamin v. Deutsche Bank Nat'l. Tr. Co.*, 757 F.3d 79,

85 (2d Cir. 2014) (finding no standing where alleged injuries were "conjectural or hypothetical")

(quotation and citation omitted). In *Kawa Orthodontics, LLP v. Secretary, United States*

*Department of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014), the Eleventh Circuit rejected a

plaintiff's "time value of money" basis for standing because the plaintiff hadn't claimed any such

injury, nor sought compensation for such an injury. *See id.* (noting that the plaintiff failed to

"allege that [it] had specific plans to invest its money into an interest-bearing asset"). Where

courts have held that the time-value of money is sufficient to demonstrate an injury in fact, they

have generally done so either when the plaintiffs specifically demanded lost interest as

compensatory damages or when the alleged injuries had analogs in tort law. *See MSPA Claims*

*1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (claim for interest); *Dieffenbach*

*v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) (seeking interest); *Van v. LLR, Inc.*,

962 F.3d 1160, 1164 (9th Cir. 2020) (finding the plaintiffs asserted injury analogous to the torts

of replevin and conversion).  Neither is the case here.  Plaintiffs are not seeking interest as

compensatory damages, nor is their claim analogous to any common law torts.  Accordingly,

Plaintiffs have not alleged a concrete and actual harm sufficient to confer Article III standing and

their claim must be dismissed.  *See Epstein v. JPMorgan Chase & Co.*, 2014 WL 1133567, at *7

n.6 (S.D.N.Y. Mar. 21, 2014) (declining to infer injury based on the lost "opportunity to use

and/or earn interest" on an uncredited amount where, as here, the plaintiff failed to "make this

claim in his papers"); *Barber v. Lincoln Nat'l Life Ins. Co.*, 260 F. Supp. 3d 855, 862 (W.D. Ky.

2017), *aff'd*, 722 F. App'x 470 (6th Cir. 2018) ("If all the complaint does is imply that *any* time a

person is denied money he or she suffers an injury from being denied the opportunity to grow

that money, then the complaint has not stated an injury with sufficient particularity.").

### B.   <u>Plaintiffs Cannot Assert A Frequency Of Pay Claim.</u>

Plaintiffs admit that they were paid in full for all work that they performed for Endeavor.

Nevertheless, Plaintiffs contend that they are entitled to a substantial, draconian penalty because

Endeavor allegedly failed to pay flight attendants, mechanics, inspectors, and maintenance

workers in accordance with NYLL § 191(1)(a), which requires that "manual workers" be paid

weekly.  NYLL § 191(1)(a).  Plaintiffs' claim must be dismissed because, for more than 100

years, only the New York Commissioner of Labor has had the right to enforce violations of

Section 191.

### 1.   <u>Section 191 Does Not Contain An Express Private Right Of Action.</u>

Section 191 establishes a weekly pay frequency rule for manual workers.  Specifically,

NYLL Section 191(1)(a) states in relevant part:

> a. Manual worker.--- (i) A manual worker shall be paid weekly and not later than seven
> calendar days after the end of the week in which the wages are earned; provided however
> that a manual worker employed by an employer authorized by the commissioner pursuant

to subparagraph (ii) of this paragraph or by a non-profitmaking organization shall be paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly.

NYLL § 191(1)(a).

Section 191 does not, and has never, given employees a private right of action to enforce the timing of payment requirement.  *See* NYLL § 191.  If such a right exists (it does not), one must look elsewhere.

2.      There Is No Basis To Infer A Private Right of Action.

As a preliminary matter, there is no Second Circuit or New York State Court of Appeals ruling on this issue.  If, and when, the appellate courts of final determination do rule, they will not infer a private right into Section 191 or Section 198 for a timing of pay violation.

In deciding whether, under New York law, to infer a private right of action, courts must evaluate the following factors:  "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme."  *Sheehy v. Big Flats Cmty. Day*, 541 N.E.2d 18, 20 (N.Y. 1989). The third factor is the "most critical," *Carrier v. Salvation Army*, 667 N.E.2d 328, 329 (N.Y. 1996), because a private right of action cannot be inferred "where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself."  *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 226 (N.Y. 2013) (partial quotation omitted).  In New York, a statute contains an implied right of action "only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history."  *Id.* (quotation and citation omitted). That is certainly not the case here.

12

        *i.*       *Recognizing A Private Right Does Not Promote Legislative Intent.*

NYLL § 191(1)(a), which dates back to the 1890s, establishes that "manual workers" should be paid weekly and that the Commissioner of Labor has sole discretion over whether to pursue violations of that requirement.   In its 1897 version – formerly known as NYLL § 10 and subsequently as NYLL § 11 – the law required the following:

> **When wages are to be paid**.  Every corporation or joint stock association, or person carrying on the business thereof by lease or otherwise, shall pay weekly to each employee the wages earned by him to a day not more than six days prior to the date of such payment.
>
> But every person or corporation operating a steam surface railroad shall, on or before the twentieth day of each month, pay the employees thereof the wages earned by them during the preceding calendar month.

L. 1897, ch. 415, Article I, § 10.

Similarly, NYLL § 198 – formerly known as NYLL § 11 and subsequently as NYLL § 12 – was also amended in 1897 to provide the following penalties:

> **Penalty for violation of preceding sections**.  If a corporation or joint-stock association, its lessee or other person carrying on the business thereof, shall fail to pay the wages of an employee, as provided in this article, it shall forfeit to the people of the state the sum of fifty dollars for each failure, to be recovered by the factory inspector in his name of office in a civil action; but an action shall not be maintained therefor, unless the factory inspector shall have given to the employer at least ten days' written notice that such an action will be brought if the wages due are not sooner paid as provided in this article.
>
> On the trial of such action, such corporation or association shall not be allowed to set up any defense, other than a valid assignment of such wages, a valid set-off against the same, or the absence of such employee from his regular place of labor at the time of payment, or an actual tender to such employee at the time of the payment of the wages so earned by him, or a breach of contract by such employee or a denial of the employment.

L. 1897, ch. 415, Article I, § 11.

Thus, in its original form, the only remedies available under the explicit statutory text were civil penalties recoverable by the "factory inspector" (i.e., the Commissioner). *Id.*  There was no private right for employees to recover.

The two statutory provisions were amended in tandem numerous times over the next 65+ years.  Notwithstanding the amendments, a few things remained consistent:  First, former NYLL §§ 10 and 11 (now Section 191) consistently used the word "wages" in the title of the provision. For example, the statute was originally entitled "**When wages are to be paid**."  L. 1890, ch. 388, § 1;  L. 1921, ch. 50.  Second, former NYLL §§ 11 and 12 (now Section 198) consistently used the word "**penalty**" and "**civil penalty**" in the title of the provision.  For example, the statute was originally entitled "**Penalty for violation of proceeding sections**" and was amended to "**Civil Penalty**."  L. 1897, ch. 415, Article I, § 11; L. 1934, ch. 745, Section 1, § 198.  Third, the only remedy available under former NYLL §§ 11 and 12 (now Section 198) was a penalty recoverable by the Commissioner.  For example, up until 1965, the provision only permitted recovery of a civil penalty "to the people of the state" "to be recovered by the commissioner in a civil action." L. 1965, ch. 354, Section 1, § 198.

In 1966, as a part of a general recodification of the Labor Law, the Legislature created a new "Article 6" and deliberately modified the preexisting statutory scheme.  In revamping the Labor Code, the Legislature created what are presently Sections 191, 197, and 198.  L. 1966, Chap. 548, Article 6.  Specifically, the Legislature moved the requirement for weekly wage payments to a new, Section 191, and for the first time, retitled it without a reference to "wages." *Id.* at § 191.  The new provision, entitled "Frequency of Payments" set forth requirements for frequency of payments for the following four categories of employees:  (1) manual workers; (2) railroad workers; (3) commission salesman; and (4) clerical and all other workers.  *Id*.  Similarly, the Legislature moved NYLL §§ 11 and 12 to Section 197 and retained the heading "Civil Penalty" and created a new Section 198 entitled "Costs, remedies."  L. 1966, Chap. 548, Article 6, §§ 197-198.  With this change, the new Section 198 provided an employee with the right to

14

institute a "wage claim" for the first time.  Despite multiple amendments since 1966, this same

limitation in Section 198 exists in the statute today:  **employees can only institute an action in**

**courts "upon a wage claim" and can only recover in such a wage claim action for an**

**"underpayment."**  *See* NYLL § 198 ("In any action instituted in the courts upon a wage claim

by an employee….the court shall allow such employee to recover the full amount of any

underpayment").

The Legislature's 1966 recodification and change in statutory nomenclature (from

"Payment of Wages" to "Frequency of Payments") is significant and indicates an intent to treat

pay frequency claims as non-wage claims that are not actionable under Section 198.

      ii.    *Creation Of A Private Right Is Not Consistent With The Legislative*
            *Scheme.*

History makes clear that no private right should be inferred because the Legislature had

the opportunity to create a private right of action when it amended the statute in 1966 (and many

times thereafter), but chose to preserve the pre-existing regime of an administrative enforcement

for non-wage, frequency of pay claims.  The New York Legislature vested exclusive

responsibility to police violations of the "manual worker" weekly pay provision in the

Commissioner of the New York State Department Of Labor ("NYS DOL").  For instance,

consistent with the legislative scheme's focus on administrative enforcement, the Commissioner

may authorize large employers to pay their manual workers less frequently than weekly.  Section

218 entitled "Violations of certain provisions; civil penalties," likewise empowers the

Commissioner (and no one else) to recover civil penalties ranging from $1,000 to $3,000 in an

administrative proceeding.  Guidance from the NYS DOL confirms that the administrative

enforcement mechanism and civil penalties are the appropriate vehicle and remedies for timing

of pay violations.  For example, the NYS DOL opined that the sanction for a § 191(1)(a) weekly

pay violation is a civil penalty imposed by the Commissioner under NYLL § 218.  *See Request*

*for Opinion Frequency of* Payment — Labor Law § 191, N.Y. Dep't. of Labor, Off. of Gen.

Couns. Op. RO07-0041 (May 8, 2007) ("Violations of certain provisions; civil penalties;"

providing that DOL Commissioner may assess against an employer "liquidated damages in the

amount of one hundred percent of unpaid wages" for violating a provision of this Article); *Sheng*

*Wang Zhang and Century Diner Buffet, Inc.*, Docket No. PR 12-180, at 13 (July 13, 2016) (N.Y.

Industrial Board of Appeals affirming $1,000 civil penalty violation of N.Y. Lab. Law §

191(1)(a) for failing to pay wages weekly to manual workers).[4]

Furthermore, NYLL § 196 mandates that the Commissioner investigate and attempt to

adjust equitably "controversies between employers and employees relating to this article."  And,

NYLL § 196-a establishes a complaint mechanism for aggrieved employees to file complaints

with the Commissioner for late payments and empowers the Commissioner to investigate said

complaints.  To that end, the Commissioner has established such a complaint mechanism that

makes clear that the NYS DOL also classifies employees' untimely wage payments complaints

as "non-wage complaints."  To illustrate, there are instructions and information about filing a

claim with Labor Standards on the NYS DOL's publicly accessible website.  Those instructions

distinguish between "wage claims" and "non-wage complaints" and classify allegations

regarding "timely payment of wages" as "non-wage complaints."  *See* Information About Filing

a Claim dated March 2021, publicly available at

https://dol.ny.gov/system/files/documents/2021/03/ls223.2.pdf, at 2 ("**Make a non-wage**

**complaint** if your employer failed to … timely payment of wages[.]") (emphasis in original).

---

[4] Give the large size of the penalty, it also makes sense from a practical perspective to leave
enforcement of Section 191 violations solely in the discretion of the NYS DOL, which can
balance the costs and benefits of seeking the penalty.

Consistent with its position that frequency of pay violations are "non-wage complaints," the NY

DOL Labor Standards Complaint Form (also publicly available on the NYS DOL's website)

categorizes failure to "pay wages on time" as a "Non-Wage Complaint."  *See* Labor Standards

Complaint Form dated March 2021, publicly available at

https://dol.ny.gov/system/files/documents/2021/03/ls223.pdf at 5 ("**Part 8.  Non-Wage**

**Complaint.**  Check those that apply if you want to make a non-wage related complaint…37h.

Pay wages on time") (emphasis in original).  In contrast, claims for unpaid wages and unpaid

minimum wages or overtime claims (i.e., wage claims for underpayment of wages) are addressed

in separate sections of the NYS DOL Complaint Form.  *Id*. at 3-4.

      In light of the statutory history and the NYS DOL's opinion, frequency of pay claims

(such as the one asserted by Plaintiffs), are "non-wage claims" that are not enforceable via

Section 198's private right, which is limited to "wage claim[s]."  *See* NYLL § 198 (1-a) (setting

forth the remedies "[i]n any action instituted in the courts upon a *wage claim* by an employee . . .

in which the employee prevails") (emphasis added).

               *iii.*    *Plaintiffs Are Not Part Of The Class Of Workers For Whose*
                     *Particular Benefit The Statute Was Enacted.*

      Assuming, as Endeavor must for the purpose of this motion, that Plaintiffs are "manual

workers" (a contention that Endeavor vigorously denies), Plaintiffs still are not part of the class

of workers for whose particular benefit the timing-of-pay statute was enacted.  The underlying

justification for weekly pay for manual workers is not tied to any need for manual workers to

receive payment of their wages faster than any other categories of employees in New York.

Rather, it is to protect a class of workers from being deprived wages in the event that their

employer became insolvent.  This is evidenced by the undisputed fact that Section 191 expressly

empowers the Commissioner to grant – and the Commissioner routinely does grant – *large*

employers like Endeavor exemptions from having to pay manual workers on a weekly basis based primarily on the financial solvency of the employer.  NYLL § 191(1)(a)(ii).  For example, Commissioner will grant an exemption (as it did for Endeavor) "if the employer furnishes satisfactory proof to the commissioner of its continuing ability to meet its payroll responsibilities."  *Id.*  In making that determination, the Commissioner considers the factors related to the financial health and solvency of the employer, such as (i) the employer's history of meeting payroll responsibilities in New York, (ii) proof of the employer's workers' compensation and disability coverage, (iii) proof that there are no outstanding warrants in New York against the employer for failing to remit state personal income tax withholdings or unemployment insurance contributions, and (iv) proof that the employer has a computerized record keeping system.  *Id.*  Notably, the Commission does not consider factors related to the employees in making the determination, such as whether the employees are low wage earners or how receiving wages less frequently might impact or harm the employees.  *Id.*

The focus on protecting employees from financially insolvent employers (unlike the Plaintiffs in this case who are or were employed by Endeavor, a multinational employer), is also consistent with the legislative history of Section 191.  Indeed, when considering whether to amend NYLL Section 191 in 1989 to authorize certain employers to pay manual workers less frequently than weekly, the New York State Department of Economic Development focused on the benefit that an exemption would provide to "employers with demonstrated financial stability" "without sacrificing workers' security."  Specifically, the Deputy Commissioner and Counsel stated:

> The provision in the bill which would allow semi-monthly wage payments to manual workers by certain ***employers with demonstrated financial stability, provides a valuable benefit to large employers***.  The shift from weekly to semi-monthly payroll periods would ease a significant and costly administrative burden for employers ***without***

*sacrificing workers' security*.  The Commissioner of Labor can rescind the authorization for less than weekly pay periods, as circumstances require.

Bill Jacket, L. 1989, chap. 487, Ten-Day Bill Memorandum, New York State Department of Economic Development (emphasis added).  Thus, in passing and subsequently amending Section 191, the legislature intended to protect only those workers who are vulnerable to not receiving their wages from financially insolvent or unstable employers.  That is not the case here.

Furthermore, the fact that the Commissioner is empowered to create an exception for large employers like Endeavor demonstrates that employees are *not* harmed in any concrete or actual way when they are paid less frequently than weekly.  Thus, allowing Plaintiffs to bring a cause of action to recover draconian penalties for alleged untimely payment of wages (as Plaintiffs suggest is proper here), does nothing to further the New York State Department of Economic Development's explicit intent to protect "workers' security."

The Plaintiffs in this case are, therefore, merely not the type of employees who this statute was designed to protect.

\* \* \* \* \*

Simply put, there is not a shred of evidence that the Legislature intended to create a private right of action to enforce Section 191, or to make Section 198 a vehicle for penalizing untimely payments.  It, therefore, would be inappropriate to infer a private right of action into the NYLL for the claim asserted by Plaintiffs.[5]

---

[5] It would also be inappropriate to infer a private right into Sections 191 or 198 – as Plaintiffs suggest – as a practical matter.  Doing so would cause a flood of litigation brought by people who were paid the correct amount of wages, and who otherwise have a remedy for alleged frequency of pay violations through the NY DOL.  Allowing those claims would be a waste of judicial resources, an unwarranted penalty on employers who otherwise paid their employees all wages due, and a windfall for plaintiffs' attorneys lucky enough to discover such a violation.

3.    *Vega* Is Wrongly Decided And Not Entitled To Any Deference.

As explained *supra*, the NYLL does not contain an express right of action allowing

Plaintiffs to recover the exponential damages that they assert here for mere untimely payment of

wages.  Endeavor, nevertheless, recognizes that some courts have recently held otherwise or used

NYLL Section 198(1-a) to create an implied private right of action for NYLL Section 191

frequency of pay violations.  *See e.g., Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d

286, 287-89 (N.Y. App. Div. 2019) (recognizing an express and implied private right of action

under NYLL § 191) ("*Vega*"); *Caul v. Petco Animal Supplies, Inc.*, No. 20-cv-3534-RPK-SJB,

2021 WL 4407856, at *3 (E.D.N.Y. Sept. 27, 2021) (explaining that it must follow *Vega* and

collecting cases finding the same).  These cases are not controlling, are wrongly decided, and are

not entitled to deference from this Court.

When the predecessor of Section 191 was enacted the 1890s, it was one section of an act,

which (in another section of the act) gave the Commissioner of Labor *alone* the right to enforce

the act's terms and to seek penalties for violations.  That is how the act remained until 1966,

when the legislature for the first time gave employees a right to file a "wage claim."  That

amendment did not authorize suits for violations of Section 191 for multiple reasons.  First, the

Legislature purposefully retitled Section 191 to "Frequency of Payment," making clear that the

provision did not constitute a "wage claim" enforceable by employees.  Second, a "wage claim"

is a claim for wages, not a claim for penalties.  The Plaintiffs here do not rely on any alleged

statutory right to file "wage claims," but rather, as explained in Section IV.A., they are seeking

penalties.  Third, the statute maintained a robust administrative enforcement mechanism that was

always (and still is) available to any allegedly aggrieved employees.

In finding that there was a private right of action, the Court in *Vega* ignored the statutory

history, relied upon a different statutory provision (Section 198(a-1)), and erroneously

determined that an untimely payment is an underpayment.  Section 198 describes remedies available for violations of the NYLL.  However, the penalties that Plaintiffs demand here are available only for **underpayment** of wages, not the **untimely** payment of wages.  Specifically, NYLL § 198(1-a) states, in relevant part:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover ***the full amount of any underpayment***, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its ***underpayment of wages*** was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due[.]

NYLL §198(1-a)(emphasis added).

The statute's protections are explicit:  it provides remedies for ***underpaid*** wages, not wages that are paid at the proper amount, but in untimely fashion.  Underpayment and untimely payment are two distinct concepts.  Underpayment means "to pay less than what is normal or required" and refers to the amount paid.  *See* Merriam-Webster definition of "underpayment."  In contrast, untimely is a synonym for late.  *See* Merriam-Webster and Black's Law Dictionary definition of "untimely."

Consistent with ordinary use of the terms, courts in this Circuit and in New York State have correctly held that employees have a private right of action under Section 198 only to recover for ***underpayments*** (i.e., circumstances where an employee did not receive his or her complete wages owed for time worked).  In other words, there is no private right of action for an employee who only alleges a mere ***untimely*** pay violation (e.g., where manual workers are paid bi-weekly instead of weekly), without an accompanying underpayment in the wages received.  *See, e.g., Arciello v. Cty. of Nassau*, No. 2019 WL 4575145, at *8 (E.D.N.Y. Sept. 20, 2019) (dismissing Section 191 claim because Section 198 does not provide a remedy for the failure to

21

timely pay wages and noting that "[c]ourts in the Southern District of New York and in this District have opined that the NYLL may not contain…a remedy for the failure to timely pay overtime wages"); *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018) ("The NYLL does not appear to provide" private recovery for Section 191 violations) (quotation and citation omitted); *Hussain v. Pak. Int'l Airlines Corp*., 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) (dismissing frequency of pay claim because "[the New York Labor Law] contains no provision for private recovery for violations of its provisions regarding frequency of payment. . . ."); *cf. IKEA U.S. v. Indus. Bd. of Appeals*, 660 N.Y.S.2d 585, 586 (N.Y. App. Div. 1997) (NYS DOL Commissioner assessed only a fine for violation of Section 191; there was no finding that the wages paid biweekly was an "underpayment" and liquidated damages were not assessed).

Accordingly, given that Plaintiffs only allege an untimely payment of their wages, not an underpayment, there is no private right of action and their claim should be dismissed.

**C.    This Court Does Not Have Jurisdiction Over Levy's Or The Proposed Flight Attendant Class' NYLL Claim.**

The Court should dismiss Levy's and the proposed flight attendant class' NYLL claim because its adjudication will require analyzing and interpreting the bargained for-CBA that governed the terms and conditions of Levy's (and all Endeavor flight attendants') employment.

The RLA provides that disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" are subject to the jurisdiction of the adjustment (arbitration) boards.  45 U.S.C. §§ 153(i) and 184.  Such "minor disputes" are left to the *exclusive* jurisdiction of system boards – not federal courts – regardless of whether CBA steps are exhausted.  *See, e.g., Consol. Rail Corp. v. Ry. Lab. Execs. Ass'n*, 491 U.S. 299, 304 (1989); *Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 337 (3d Cir.

1993).  Claims are preempted not only when they are based on rights created under a CBA with an RLA-covered carrier, but also when a claim's resolution will require interpretation of, or is substantially dependent on, analysis of a collective bargaining agreement.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Capraro.*, 993 F.2d at 331.

Levy's and the proposed flight attendant class' NYLL claim turns on the central allegations that Endeavor improperly paid flight attendants on a semi-monthly basis.  Compl. ¶¶ 1, 4, 7, 28, 55-58.  Specifically, they allege that Endeavor flight attendants are "manual workers," and that Endeavor violated Section 191 by paying them less frequently than weekly, even though the governing CBA requires Endeavor to pay flight attendants semi-monthly.  Plaintiffs' allegation cannot coexist without the CBA.  In order to adjudicate this claim, the Court will be required to analyze and interpret whether Endeavor complied with the negotiated CBA provision governing flight attendant compensation and frequency of pay.  Douglas Decl., Ex. A. (§18. Compensation).  For example, the CBA mandates that flight attendants are to be paid semi-monthly on the first (1st) and sixteenth (16th) days of each month, or the business day prior if those days fall on a weekend.  *Id.*

The Court will also be required to resolve whether flight attendants are "manual workers" under the NYLL.  In order to make that determination, the Court will similarly be required to analyze, interpret, and weigh flight attendant job responsibilities, which are governed by Federal Aviation Regulations and the CBA.  Indeed, flight attendants must be qualified under Federal Aviation Regulations and their job responsibilities (which are set forth in the bargained for CBA) include performing federal mandated safety functions, ensuring passenger safety and wellbeing, completing training and reports, and conducting cabin in-flight service as defined in the CBA.  Douglas Decl., Ex. A (§2. Definition of Flight Attendant).  There is no feasible way to resolve

the validity of these allegations without interpreting Endeavor's, Levy's and the flight attendants' rights and obligations under the CBA pertaining to flight attendant compensation and job responsibilities.  Pursuant to the RLA, the CBA provides the exclusive, mandatory process to resolve these contractual questions that are at the core of Levy's claim.

Accordingly, Levy's and the proposed flight attendant class' NYLL claim should be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), because it will require interpretation of, or is substantially dependent on, analysis of a collective bargaining agreement and is thus preempted by the RLA.  *Cf. Garcia v. Allied Parking Sys.*, 752 N.Y.S.2d 317 (N.Y. App. Div. 2002) (finding that plaintiffs NYLL §§ 191 and 198 claims for failure to pay overtime at the rate set in the CBA were preempted, because the "claims necessarily require interpretation of the collective bargaining agreement"); *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (affirming that Section 301 of the LMRA preempted plaintiffs' class action claims that Saks' return policy constituted impermissible wage deductions in violation of NYLL § 193); *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 598 (E.D.N.Y. 2007) (dismissing plaintiffs' class action claims alleging that Verizon did not pay them wages earned and made unlawful deductions from their wages in violation of Article 6 of the NYLL as preempted by Section 301 of the LMRA).

**D.**     **Plaintiffs' Proposed Flight Attendant Class Impermissibly Displaces Legislative And Policy Decisions Made By Other States.**

The Court should dismiss Plaintiffs' proposed flight attendant class, because application of the NYLL to flight attendants constitutes an impermissible extraterritorial application of New York State law that violates the Commerce Clause.  The Commerce Clause grants Congress the power to "regulate Commerce with foreign Nations, and among the several States[.]"  U.S. Const. art. I, § 8, cl. 3.  The Commerce Clause contains a negative implication, which limits the

24

power of local governments to enact laws that inhibit national commerce.  *Comptroller of Treasury of Maryland v. Wynne*, 575 U.S. 542, 549 (2015) (holding the Commerce Clause prohibits states from "imposing excessive burdens on interstate commerce") (citing *Gibbons v. Ogden*, 22 U.S. 1, 208-09 (1824)).  As a result, the United States Constitution ensures that New York State only regulates conduct that it has a substantial interest in controlling.

The Commerce Clause can be violated three ways:  First, a statute that "clearly discriminates against interstate commerce in favor of intrastate commerce" is "virtually invalid *per se*."  *Levy v. Rowland*, 359 F. Supp. 2d 267, 273 (E.D.N.Y. 2005) (*quoting Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004)).  Second, a statute that "has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries" of the municipality in question is invalid *per se*.  *Levy,* 359 F. Supp. 2d at 216.  Third, a statute that "imposes a burden on interstate commerce incommensurate with the local benefits secured" will be invalidated under the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  *Id.*  Here, application of the NYLL to Plaintiffs' proposed class of flight attendants who work in multiple jurisdictions (each with its own alleged interest in regulating conduct), constitutes an improper extraterritorial application of New York State law.

In determining whether a statute controls conduct extraterritorially (and thus violates the Commerce Clause), Courts evaluate the practical consequences of the statute, as well as "how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation."  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989).  The Commerce Clause "protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State."  *Id*. at 337.  In this case, application of the NYLL to flight

25

attendants, including those who are not based in New York (as Plaintiffs propose) will project New York's law nationwide and will inappropriately displace the legislative and policy decisions of other states.

Plaintiffs seek to represent a proposed class of flight attendants who worked in New York for any amount of time, even a *de minimis* amount.  Flight attendants, unlike virtually all other types of employees, do not work in one place and spend the vast majority of their time working in and above various states, cities, and municipalities.  As a result, Plaintiffs are arguing that by performing any limited amount of work in New York, the NYLL should travel with flight attendants throughout the country and dictate the timing of their pay.  New York does not, and cannot, require Endeavor to apply New York's wage and hour laws to all of its 1,500 flight attendants, without regard to (i) where they are live and are based, (ii) where they perform the work; or (iii) what other states may have an interest in protecting their employment, solely because they flew into or out of New York at some point.  As pled, the New York Labor Law will travel with flight attendants throughout the country and the world.  Such propagation of New York State's law nationally flies in the face of the Commerce Clause and must be invalidated. *See Brown-Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S. 573, 582-583 (1986); *see also Am. Librs. Ass'n v. Pataki*, 969 F. Supp. 160, 177, 182 (S.D.N.Y. 1997) (finding that a New York Statute criminalizing the dissemination of obscene materials to minors on the internet was *per se* unconstitutional, because it was "impossible to restrict the effects of the New York Act to conduct occurring within New York[,]" due to the unique nature of the internet, which "requires a cohesive national scheme of regulation so that users are reasonably able to determine their obligations.  Regulation on a local [l]evel, by contrast, will leave users lost in a welter of inconsistent laws, imposed by different states with different priorities.").

Limiting Plaintiffs' proposed flight attendant class to only those flight attendants based in New York does not save their claim. Even for those flight attendants who are based at Endeavor's New York City flight attendant bases, they arrive at John F. Kennedy or LaGuardia International Airports for the sole purpose of departing and working on flights heading elsewhere. Under Plaintiffs' theory, the NYLL would follow flight attendants around the country and would control conduct occurring outside of New York (i.e., the timing of pay for all wages earned for work performed outside of New York State). Such a result would improperly allow New York to project its timing of pay law into every other state where Endeavor flight attendants work and flies in the face of the Commerce Clause. *See Healthcare Distribution All. v. Zucker,* 353 F. Supp. 3d 235, 261 (S.D.N.Y. 2018), *reversed on other grounds*, (holding that a statute that would allow an "opioid manufacturer based in Maine that wished to pass on the surcharge it paid on New York transactions by selling opioids at a markup to a pharmacy in New Mexico, [to] face a million-dollar penalty from New York State" clearly violated the Commerce Clause).

In addition, the risk of inconsistent legislation is not hypothetical – it is real and substantial – and the result of having to comply with each state's unique frequency of pay law will undermine the vital objectives of air travel. At present, approximately 47 states and Washington D.C., have their own different requirements for frequency and timing of pay. Given that flight attendants work in and above many of these jurisdictions on a daily basis, there are multiple jurisdiction with an interest in their employment. Consider, for example, a Cincinnati, Ohio based flight attendant who lives in Iowa, routinely flies to Minneapolis, Minnesota, and flew to New York once during the applicable class period. Under Plaintiffs' theory, the NYLL should apply to this flight attendant (and all others similarly situated). However, if New York

State is allowed to apply its wage and hour laws to all such flight attendants based and working throughout the country, then there is no reason to believe that other states and municipalities would not take the same position.  Indeed, at least two Courts already have applied state wage and hour laws in such a manner.  *See e.g., Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157 (9th Cir. 2021); *Bostain v. Food Express, Inc.*, 153 P.3d 846, 851 (Wash. 2007) (holding that Washington-based interstate truckers are protected by Washington's wage and hour laws wherever they work).

As a result, under this hypothetical, Endeavor could potentially be required to comply with at least four distinct and conflicting frequency of pay statutes (New York, Ohio, Minnesota, and Iowa) as to one individual flight attendant.  For example, New York State law requires employers pay "manual workers" (which Endeavor vigorously denies includes flight attendants) on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned.  NYLL § 191(1)(a).  In contrast, under Ohio State Law employers must pay employees semi-monthly.  Ohio § 4113.15(A).  Wages earned in the first half of a month must be paid by the first day of the following month and wages earned in the second half of a month must be paid by the 15th day of the following month.  *Id.*  Whereas, Minnesota requires employers pay employees every 31 days, unless the employees are engaged in "transitory employment," then they must be paid at intervals of not more than 15 days.  Minn. Stat. Ann. § 181.10.  By contrast, Iowa allows employers to pay on any predictable and reliable pay schedule, as long as employees get paid monthly and no later than 12 days from the end of the period when the wages were earned.  Iowa Code § 91A.3.  New York, Ohio, Iowa, and Minnesota state statutes all have

different pay requirements that cannot be simultaneously complied with and are thus directly inconsistent.[6]

The Commerce Clause protects businesses engaged in interstate commerce from precisely this type of inconsistency between state statutes. This principle is particularly important in the airline context. Air transportation is unique in that it is inherently national and requires a uniform system of regulation that is not amenable to a patchwork of state and local regulations in order to carry out its vital public interests. *See Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 527 (1959) (stressing "the need for national uniformity in the regulations for interstate travel") (quotation and citation omitted); *Northwest Airlines, Inc. v. State of Minnesota*, 322 U.S. 292, 302 (1944) (Jackson, J., concurring) (The airline industry can only achieve its vital objective if the "national air commerce" remains free from "local burdens."); *see also City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 633-634 (1973) (The airline industry is unique in that "[f]ederal control is intensive and exclusive. Planes…move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands.").

Allowing Plaintiffs' claim and proposed class to proceed despite these state statutory differences would effectively allow New York to make policy and legislative decisions for virtually every other state – including Minnesota where Endeavor principally operates – notwithstanding the fact that those state legislatures used their discretion to strike a different balance with respect to employees' frequency and timing of pay. Plaintiffs' proposed flight attendant class is, therefore, *per se* invalid. *See Am. Booksellers Found. For Free Expression v.*

---

[6] Required compliance with the myriad of different state pay frequency laws will have the practical effect of putting Endeavor's global operations at the mercy of whichever state or municipality has the most restrictive requirements.

*Dean*, 202 F. Supp. 2d 300, 320 (D. Vt. 2002), *aff'd in part, modified in part sub nom. Am. Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir. 2003) (finding that statute was a *per se* violation of the Commerce Clause, where web publishers outside of Vermont had to conform communications to Vermont's regulation or risk penalty); *see also Shaffer v. Heitner,* 433 U.S. 186, 197 (1977) ("[A]ny attempt 'directly' to assert extraterritorial jurisdiction over persons . . . would offend sister States and exceed the inherent limits of the State's power.").

E.   **Plaintiffs' Proposed Flight Attendant Class Is Improper Because The New York Labor Law Does Not Apply Extraterritorially.**

In the alternative, Plaintiffs' proposed flight attendant class claim should be dismissed, because the NYLL does not apply to people who work outside of New York.  As explained *supra*, Plaintiffs seek to represent a proposed class of flight attendants who worked in New York for any limited amount of time.  It is axiomatic that the NYLL is designed to protect individuals who are actually working in New York.  As a result, Courts in this Circuit have repeatedly, uniformly, and correctly held that the NYLL does not apply extraterritorially to work performed outside of New York State.  *See e.g.*, *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 469 (S.D.N.Y. 2013) (holding that the equal pay provisions of the NYLL do not apply extraterritorially to individuals working outside of New York); *Magnuson v. Newman*, 2013 WL 5380387, at *5 (S.D.N.Y. Sept. 25, 2013) ("[T]he [NYLL] statute does not apply to people who work outside of the State of New York."); *Warman v. Am. Nat'l Standards Inst.*, 2016 WL 3676681, at *1 (S.D.N.Y. July 6, 2016) (dismissing NYLL claims because plaintiff did not work in New York).

This is true even where the plaintiff occasionally traveled to New York for work.[7]  For example, in *Hart v. Dresdner Kleinwort Wasserstein Securities, LLC*, 2006 WL 2356157 (S.D.N.Y. Aug. 9, 2006), a plaintiff living and working in London sued her employer – an investment bank with offices in different cities around the world – in New York, alleging violations of the NYLL.  Even though the plaintiff previously worked in New York, her supervisor remained in New York, she traveled to New York to work for four weeks per year, and she serviced clients in New York, Judge Batts nevertheless found that the NYLL did not apply extraterritorially and dismissed her claims.  Similarly, in *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578-79 (S.D.N.Y. 2013), Judge Gardephe granted summary judgment to the defendant on plaintiff's NYLL overtime claims – for work performed outside of New York – after recognizing that the NYLL "contain[s] no clear statement of intended extraterritorial effect" and that the "crucial issue is where the employee is 'laboring.'" (citation omitted).  *See also Magnuson*, 2013 WL 5380387 (generally) (dismissing NYLL claims where work was performed outside of New York because Judge Furman found that "[i]n combination with the presumption against extraterritoriality, it follows that the [NYLL] does not apply to people who work outside of the State of New York").  Accordingly, Plaintiffs' proposed flight attendant class should be

---

[7] This is also consistent with how other New York statutes are interpreted, including the New York State and City Human Rights Law, where Courts have "repeatedly held that a non-resident plaintiff's occasional meetings in or travel to [NY State or] City are tangential and do not" afford employees the protections of the Human Rights Laws.  *Pedroza v. Ralph Lauren Corp.*, 2020 WL 4273988, at *2, *4 (S.D.N.Y. July 24, 2020) (dismissing claims because plaintiff "failed to meet her burden of demonstrating an impact" in New York where among other tangential contacts she "attended meetings and trainings" in NYC); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013) ("[B]oth the New York Court of Appeals and the . . . Second Circuit have held that the impact requirement is not satisfied simply by pointing" to meetings in NYC).

dismissed to the extent that Plaintiffs seek to apply NYLL to flight attendants who are based, or worked, or earned wages, outside of New York.

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, Endeavor respectfully requests that the Court grant its Motion to Dismiss, together with such other and further relief as this Court deems appropriate.

Dated: January 24, 2022                              Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Ira G. Rosenstein*
    Ira G. Rosenstein
    Brendan T. Killeen
    Nicole M. Zito
    101 Park Avenue
    New York, NY 10178-0060
    Phone: (212) 309-6700
    Fax: (212) 309-6001

*Attorneys for Defendant Endeavor Air, Inc.*